HENRY B. SCHENCK AND OTHERS, APPELLANTS, *v.* JOHN P. O'NEILL, AS RECEIVER, &c., RESPONDENT, IMPLEADED WITH OTHERS.

*Consideration—what is a sufficient one to support a mortgage—when the mortgagor is estopped from disputing the validity of it, by a certificate given upon its assignment.*

In February, 1870, one Schenck and others filed in the insurance department, a declaration for the organization of The Peabody Insurance Company, with the certificate of the attorney-general annexed. Schenck subscribed for seventy shares of the stock, and gave therefor three mortgages upon real estate owned by him, which were subsequently assigned by the company to the superintendent of the insurance department, accompanied by a certificate signed by Schenck, to the effect that there was due and to become due thereon the principal sum, with interest, and that there was no legal or equitable defense thereto. The Peabody Company being unable to raise the amount required by law to authorize it to commence business, consolidated with the Farmers' and Mechanics' Company, all the stockholders consenting thereto; one of the plaintiffs, the administrator of Schenck, signing the consent for the stock held by him. Thereafter the mortgages were assigned by the superintendent of the insurance department to the Farmers' and Mechanics' Company, and thereafter by various mesne conveyances they came into the hands of the defendant.

In an action by the plaintiffs, the heirs of Schenck, to have the mortgages canceled on the ground of the failure of the consideration upon which they were given, *Held,* that they were founded upon a valuable consideration, and that there had been no failure thereof.

That even if there had been a failure of the consideration, Schenck, and the plaintiff, as his administrator, would have been estopped from alleging it by the certificate given by him upon the first assignment of the mortgage.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action, by the court at Special Term. The action was brought to obtain a decree canceling three mortgages made by the ancestor of the plaintiffs on the ground of a failure of consideration.

*Henry J. Schenck,* for the appellants

*Edgar M. Cullen,* for the respondent.

DYKMAN, J.:

In the administration of precautionary or protective justice

courts of equity entertain jurisdiction of actions for delivery up of written instruments because a party has fears of future injury from their vexatious use, when evidence to impeach them is lost; and such actions may be maintained even where the party seeking relief has a defense in law or equity against the instrument of which he seeks cancellation. (*McHenry* v. *Hazard*, 45 N. Y., 581.) The foundation of the action, however, must always be accident, mistake or fraud, or the instrument must be held for unconscientious purposes.

This action seeks the surrender of three bonds and mortgages, on the ground of failure of consideration, which brings it under the last-named head. It is true, an attempt was made on the trial to show that the mortgages were improperly put afloat, but it was not successful, and the trial judge has not sustained the position.

In the month of February, 1870, measures were taken for the organization of an incorporated company, for insurance of individual lives, and among the actors in the scheme was John B. Schenck, the ancestor of the plaintiffs. The name was to be the Peabody Insurance Company, and its organization was completed so far as filing the declaration and charter, and the certificate of the attorney-general thereto was concerned.

Three persons were apppointed commissioners to open books for subscriptions to the capital stock of the company, and in June, 1870, John B. Schenck subscribed for seventy shares of the stock, and in payment thereof executed and delivered to the three commissioners the three bonds and mortgages in question here. He died in August, 1870, and the lands covered by the mortgages came to the plaintiffs by descent, and they desire their cancellation because they are a cloud on their title.

The stock of the company was not taken, and the deposit necessary to authorize the transaction of business was not made with the insurance department at Albany.

Thereafter the Peabody Company became virtually consolidated with the Farmers' and Mechanics' Insurance Company, the consent thereto being signed by all the stockholders of the Peabody Company. The plaintiff, W. T. Y. Schenck, signing as administrator of the estate of his father John B. Schenck, who was then dead, the

stock being held by the administrators. This was September 22, 1870, and the Peabody Company then had over $40,000 in money, and some three hundred applications for policies which had not been issued. All of which was turned over to the new company, with the office furniture, books and stationery.

On June 13, 1870, these mortgages were assigned by the Peabody Company to George W. Miller, the superintendent of the insurance department, and indorsed upon the assignments was a certificate signed by John B. Schenck, the mortgagor, to the effect that he consents to the assignment; that there is due and unpaid and to become due and unpaid the principal sum with interest, and that there is no offset to, or legal or equitable defense against the same.

On October 23, 1870, Miller, the superintendent, reassigned these bonds and mortgages to the Peabody Company, and on October 28, 1870, the Peabody Company assigned them to the Farmers' and Mechanics' Company, and that company on the same day assigned them to superintendent Miller, who received them as security under the statute, for the policy-holders of the Farmers' Company. The Farmers' and Mechanics' Company afterwards became insolvent, and the receiver by direction of the court, transferred these mortgages to the Empire Company, and they subsequently passed to the Continental Company, of which the defendant O'Neill, is the receiver.

It is thus seen that these bonds and mortgages were executed and delivered for a valuable consideration, and that therein there was neither accident, fraud nor mistake. It also appears that they have come to the Continental Life Insurance Company by regular assignments, and in regular course of business. The plaintiffs have not, therefore, shown any infirmity in the title to these securities.

These plaintiffs can have no more advantageous relation to the original transaction than their ancestor. He gave these mortgages for a valuable consideration in the expectation of their being permanently deposited as security for policy-holders when the requisite amount was made up, and the fact that such amount never was realized certainly gave him no right to their cancellation.

The company was a corporation *de facto*, and whatever

remedy he had after its failure to qualify itself for business did not lie in such an action. The company might have been dissolved by proper proceedings instituted for that purpose, but instead of adopting that course a consolidation with another company was arranged by an agreement signed by all the stockholders of the Peabody Company.

The seventy shares of stock, for which these mortgages were given, were voted on by the administrator of the estate by whom they were held. These mortgages, with all other property, went to the new company in pursuance of the agreement, and these plaintiffs cannot now object to such disposition.

Moreover the plaintiffs are now estopped from imputing invalidity to these mortgages by the certificate made by the mortgagor at the time of their transfer to the superintendent of insurance. That certificate contains all the elements of an estoppel *in pais*, and as the mortgagor was precluded from contradicting it in his lifetime, so now the plaintiffs are debarred from such contradiction.

It remains to notice an objection to the defendants' testimony. The original proposition from the Farmers' Company for a consolidation and its acceptance by the Peabody Company could not be produced, and after the former president of the latter company had testified that he could not tell where the agreement was or where it could be found, a book was shown him which he said contained exactly the agreement, and then the book from page seventy-three to seventy-nine was offered in evidence. It was objected that the proper foundation had not been laid for secondary evidence, and that the testimony was immaterial.

It must be remembered that the Farmers' Company went to a receiver; that all the papers then ceased to be of any value, and that nine years have elapsed since that time. This makes slight proof of loss sufficient to let in the testimony (*Jackson* v. *Root*, 18 Johns., 73), and we think the testimony was properly admitted.

In relation to the objection to the book commencing on page seventy-nine, it is sufficient to say that it does not appear that those pages were offered or read. The judgment must be affirmed, with costs.

GILBERT, J., concurred; BARNARD, P. J., not sitting.

Judgment affirmed, with costs.